Your Honor, may it please the Court, Alan Graff arguing for the appellant relator Daniel Thompson. The relator is, before this Court, appealing the District Court's dismissal of his Fourth The District Court below, while rightly identifying the standard of review for determining whether the complaint pleaded a plausible cause of action under the False Claims Act, did not correctly apply that standard in the circumstances of this case. What happened here, as explained by this Court in Starr v. Baca, the relator pleaded specific, non-conclusory allegations of fact, that Honeywell was charging a $10,000 license fee for versions of G Corp. 3 through 6, which the government substantially funded. He also pleaded that the Honeywell software was not a commercial item, was never sold commercially, never leased commercially, so the applicable provisions of the Defense Federal Acquisition Regulation Supplement didn't apply because it was non-commercial software. But none of that is enough, right? You have to plead knowing... Yes, and he did plead knowing. So, you know, you're emphasizing the stuff, you're talking about the stuff that nobody disputes that you alleged. Oh, but he did plead it. The District Court ruled against you because it held that there was no insufficient evidence, or allegations, rather, sufficient to comply with Rule 9 as to the scienter element. So that's what you need to focus on, telling us there's plenty of other stuff that wasn't at issue doesn't help your case, honey. It does, Your Honor, because the... Now with me. Okay. Arguing about stuff that's not in dispute really doesn't... You know, talk about the stuff that matters. I mean, the District Court had specific reasons for finding the complaint insufficient. Why don't you speak to those facts? Well, Honeywell is a sophisticated government contractor, knows full well the regulations... What did you allege? What are the specific facts that support scienter? The specific facts that support scienter are, number one, that Honeywell was charging a license fee for G-Corps versions 3 through 6. Could have been a mistake. Hm? Could have been a mistake. It wasn't a mistake. Well, you say it wasn't a mistake. But it certainly, it gets you to first basis. No, it doesn't. And you have to comply with Rule 9. This is, you're alleging fraud. You need to give specific facts. You can't just... Well, we... What are the specific facts? The specific facts that are admissions by Honeywell itself. Honeywell admitted, for instance, that it made... We lied and we know it? They said that? It's in the record. They tendered these facts. They, it's in the record before the District Court here. They tendered the fact that they were relying on a license agreement that they said was the governing license agreement. The District Court specifically found that that license agreement was, could be, was charging a license fee for G-Corps versions 3 through 6, which another Honeywell document shows was substantially funded by the government. You keep saying that Honeywell tendered facts. We're here on 12B-6? This is in 12B-6, yes. Right. So we're looking only at the complaint in terms of whether the allegations are sufficient. Well, yes. And the complaint itself alleged specifically that Honeywell was charging a license fee. The district judge concludes that this is at most a contract dispute. And it may well be consistent with the complaint and consistent with the view of the District Court that Honeywell was overcharging. What the District Court found lacking was sufficient allegation under Rule 9 of knowing fraud. And a contract dispute is different, and even overcharging and wrongful behavior in a contract dispute is different from fraud. So how do you get this from a contract dispute in which Honeywell has acted wrongfully, which for the moment I'll concede is properly alleged, how do you get from there to knowing fraud based upon what you've alleged? Well, we specifically alleged that Honeywell was charging a license fee for G-Corps. No, I got that. Okay. But that's consistent with a disagreement over what the contract terms were or consistent with mistake. I respectfully disagree with you, Your Honor, because this is a sophisticated government contractor, knows the regulations on which it is. But, you know, I think Rule 9 requires more than a statement that this is a sophisticated contractor who overcharged. It requires that you show fraud. Or, indeed, as I think about it, if it's a mistake, Rule 9 applies both to fraud and mistake. So if you're going to plead, so even if it's a mistake, you're going to have to plead that, too. You're correct, Your Honor. But the standard here in Rule 9 is we gave, we certainly, the purpose of Rule 9 is to give notice to Honeywell of the allegations in the complaint. And that we clearly did because Honeywell admitted specifically. The purpose of Rule 9, rightly or wrongly, the purpose of Rule 9 is to make it harder to bring a complaint if you're alleging fraud. You're correct, Your Honor. But we satisfied that burden because we pled that Honeywell made representations to the government that it was not, it completely funded the G Corp. 3 through 6. And, but the district court below found that, no, that was not, I mean, Honeywell admitted that they made that representation. So they certainly had notice of the misrepresentation that we were alleging. Number two, Honeywell alleged that they were, that the G Corp. was a commercial item, specifically alleged that. We said it was not a commercial item based on evidence that is pleaded in the complaint, the so-called Dillon Memorandum. The, so they were on notice of that. Honeywell admitted that they had notice of that, that they had made that representation, that they were saying that G Corp. was a commercial item, which the district court expressly found was not true. So we satisfied the burden. We're not seeking to hold specific individuals in Honeywell liable for this action. We're talking about Honeywell as a corporate entity. Oh, I got that. You introduced your argument with a citation or reference to Starr v. Baca. Correct. Was that a Rule 8 or a Rule 9 case? That was a Rule 8 case. Yeah. It was a Rule 8 case. One of my favorite opinions, by the way, but it was a Rule 8 case. Well, I, Your Honor, we agree with that opinion, because what the district court did was to rule in contravention of Starr v. Baca. When Starr v. Baca says, look. But you see, Starr v. Baca is not a Rule 9 case, and Rule 9 requires particularity, which is what the district court here found lacking. And Rule 8 does not require that degree of particularity. Well, we respectfully disagree, Your Honor. We provided sufficient particularity, based on admissions by Honeywell itself, that we satisfied the who, what, when, where, why of all of this fraud. What the district court was doing in this case was saying, you must prove your allegations of fact. And this is a ---- Oh, the district judge didn't say that. This district judge understands pleading rules. This is a 12b-6. You don't have to prove a thing. You just have to allege it. Well, we alleged it. We alleged it. We alleged everything that we needed to satisfy Rule 9, and we alleged everything that we needed to satisfy Rule 8. And the district court did do it in spite of that. The district court ruled on a 12b-6 motion and dismissed the case. Okay. You've got about five minutes left. Do you want to save that? I'll save that for later, Your Honor. Thank you. May it please the Court, David DeBruin for Appelli-Honeywell. Your Honors, this is not a complicated case. There is no indicia or plausible inference of fraud of the knowing submission of a false claim, just as the district court found after giving the relator multiple opportunities, in fact, ultimately six different attempts to state a sufficient claim under the False Claims Act. Essentially, as the district court found, the relator's claim, in the absence of any allegations that Anywell et Honeywell engaged in any knowing submission of a false claim, that their complaint essentially boiled down to that this charging had to be so obviously wrong that Honeywell had to know, again, as a sophisticated defense contractor. And the district court ---- And is your defense, well, they may look sophisticated, but in fact they're kind of stupid? Absolutely not, Your Honor. Honeywell is, of course, a sophisticated contractor, as is the United States government, which ---- Then why isn't it enough if we can establish, if the complaint sufficiently alleges that this is an overcharge, why isn't it enough to say, okay, with a sophisticated overcharger, I don't need to tell you much more than that? Well, as the district court found, there is a fundamental difference between a contract dispute if, for the moment, you accept the allegations of a contract dispute, whether there is a proper charge, and a claim for fraud under the False Claims Act, which requires more, as this Court has recognized repeatedly, of a dispute over contract terms, government regulations. And at most, that is what the relator has alleged. And as this Court held in the Bly-McGee case, the purpose of 9B is to ensure that the filing of complaints are not serving as a pretext for discovery to try to ferret out whether, in fact, there might be some basis for the relator to establish. I think the government made a mistake here in accepting this. And I think it's important, and we went to some length to the district court to lay the foundation as to why the allegation that this is so obviously wrong, that it has to be a knowing submission of a false claim, was incorrect. And in the relator's own brief to this Court, at page 2, he admits, and I quote, the H-764 EGI system includes software delivered by Honeywell, developed by Honeywell, for use on commercial and civilian aircraft. So he admits, and he admitted below, that this very sophisticated software that navigates multiple platforms contains software that was originally developed by Honeywell for commercial purposes. The United States government, the contracting officer, and this appears at page 364 of the excerpts of records, made an express determination that the license fee at issue here was a commercial item because it was of a kind sold in the commercial marketplace. And he relied upon statements made by Honeywell in its proposal, and he made reference to fact-finding that the government conducted in making the determination that this was a commercial item. And again, that is set forth at page 364 of the record. That is a document that the relator presented before the district court as part of his revised sixth complaint, essentially. And there is nothing in the complaint to establish or even allege, not establish, but even to set forth a plausible basis that when Honeywell submitted its proposal information to the government, when the government conducted its fact-finding on a commercial item, that there was any misrepresentation, any false statement, any plausible attempt to deceive the government in the basis for that commercial item determination, which is ultimately what the government rested upon in finding that this license fee was appropriate because it was consistent with the license fee that Honeywell also was charging in the commercial marketplace for the components of the software that were basically of a kind, the same components that exist in the commercial aircraft as exist in the military aircraft. The relator's construct is based entirely on one document that he set forth before the district court and repeatedly argued the so-called Honeywell technology roadmap that also appears in the record. And he contended that based on his interpretation of EROS that showed that there were various enhancements to the core software that Honeywell developed and that those enhancements showed that the government had funded changes to the core software. The license agreement at issue is not over the entire G core software. It identifies specifically 14 functions and capabilities that Honeywell developed at private expense. The relator admitted in a declaration that he filed in the district court that he didn't even know there was a license agreement in this case. He had no idea what elements of the software was licensed. This is a classic case of a person who's not an insider, who has no idea, he's not a software engineer, he's a contracts administrator. He has no idea what that software is, what it consists of, what portions of the software are licensed, which portions are not. Files a complaint because he disagrees with what his company disagreed with, that Honeywell was charging a license fee as it consistently has charged. And now seeks to get discovery, hire experts to unravel the software code. It's precisely what this court has held you cannot do under Rule 9b. Allegations of fraud are massive. Litigation of this type can be very expensive. And ultimately, if the claim is found to be meritless, it's the United States government, it's the taxpayers who bear the bulk of the costs of litigation like this. It is not cost-free. And that is exactly, again, what this court in Bly-McGee said, that the purpose of 9b is to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs. You know, I was with you all the way until you start telling me that the Ketam statute costs the government money. The Ketam statute is designed to recover money wrongfully extracted from the government. Of course it does. Of course it does. And there clearly are cases both where the United States bring claims under the False Claims Act and some cases where relators have brought claims under the False Claims Act. And again, the gate is Rule 9b. But the point is where claims are prosecuted and expensive litigation results and those claims are not found to be meritorious, under the FAR, the provisions of the FAR, the contractor is allowed to include the litigation costs, up to 80% of those costs in its allowable costs. And so ultimately, if a case is not meritorious, the bulk, 80% of the litigation costs are allowable costs under the FAR. And so that is why Rule 9b imposes a gate. It's been a long time since I've dealt with the FAR, I think 30 years. How exactly would this work? Would this be charged back under the contract? I mean, the contract. Well, Your Honor, this is a, I mean, the FAR has many provisions, including detailed provisions on cost allowability, and there is a specific provision of the FAR that deals with the allowability of litigation costs. Okay, so let's say this case is litigated. It goes back, it's litigated, Honeywell wins. You have a bill for X dollars. You take 80% of that, and what do you do with it? So basically what would happen, Your Honor, is 80% of the, if we win, if we prevail ultimately after years of discovery and experts and everything else, 80% of those costs go into the company's, basically their overhead costs. So it's not that we would send a bill to the government for our costs, although. So the next time, the next time you have a contract with the government, you can bill that in your overhead costs? It would affect the company's rates, essentially, their overhead rates, and those rates, yes, do tend to apply to. It's not that you would go back to charge back for the contract that was at issue here. That is, well, that is correct. The charges at issue here, the license fee that the government in open negotiations accepted as a reasonable commercial cost because it was consistent with costs Honeywell were charging to commercial customers, consistent with costs other contractors were charging to the government. That's, again, 364 of the record. Those costs would be appropriate and would remain. Then Honeywell, in its cost proposals, its overhead pools would be allowed to include 80% of the litigation fees. In future contracts. It would be allowable costs that would affect the company's cost rates going forward, yes. And my point simply is that you have to. I misunderstood your argument, then. I thought you were telling me that you would recover 80% of this as part of the contract with respect to this particular contract. I'm sorry, Your Honor. I did not mean to convey that. You did, but it might have been my fault. Well, I may have misspoke. All I'm saying is. The FAR is a. It is, and this was cited in the papers. It's like a labyrinth, so that's why I asked you the question. As I recall, it's not straightforward. My point was intended to be small. It is simply that the reason we have Rule 9b, which this court has recognized in Bly-McGee and Caffasso and several other cases, is that there is an important gate post, and that is a gate post to protect parties from expensive and burdensome litigation unless there is, in fact, an appropriate allegation of a knowing submission of a false claim. And the point is that litigation, even if it goes on for years and ultimately is unsuccessful, is not just a cost of doing business. There is a real cost to society and, in this case, to the government in those claims. The government looked at these allegations. It did not intervene to prosecute them. That does not prevent the relator, if he makes an adequate showing, from going forward. Here, the district court gave the relator six different opportunities, specifically directed, I dismiss the third amended complaint without prejudice. Here is what must be alleged to satisfy. It was very explicit. The relator came back with a fourth amended complaint. We contended that that was inadequate. The relator then sought leave to file the ultimate last revised fourth amended complaint, and the district court found that inadequate, which was ultimately the sixth complaint the relator had filed. The relator, in his brief, does not seek any attempt to replete. He has nothing more to add. He knows virtually nothing. And so the question is, in this complaint, has he adequately alleged enough to get over the Rule 9b gate post? And I think the answer is the district court, after a very extended period, the answer  The relator relies heavily on the Darby Dillon e-mail. And as the district court found, and it's apparent from that document, which, again, appears in the record, and that's at ER 33, the Darby Dillon e-mail, in 2007, made a determination that the EGI unit, which consists of hardware, accelerometers, ring laser gyroscopes, computer software, all of that is the navigation system for the B-1B bomber, for Apache helicopters, for numerous platforms. She found the entire system was not equivalent to the laser ref navigation system that's used on commercial aircraft. That was in 2007. In 2011, Contracting Officer Kirshner made a different finding, that the software license fee, a component of the EGI system, was a commercial item. And as a result, in the contract negotiations for the renewal of the contract for the EGI system, the component of the price associated with the software license fee could be set aside and accepted as a commercially reasonable price without needing further support in the contract negotiations. That was just one component, which is the only component at issue here. But there's nothing in the Darby Dillon e-mail in 2007, finding the entire system not to be a commercial item that's inconsistent with Contracting Officer Kirshner's determination in 2011. Again, the District Court gave the relator the opportunity. That was brought forth heavily on a motion for reconsideration after the District Court had dismissed the complaint. And again, the District Court looked at that, assessed, does this allegation based on this 2007 e-mail allow that the relator has now pleaded that Honeywell knowingly submitted a false claim, knew? And the answer is clearly no. In 2007, another Contracting Officer found the license fee appropriate. There's no allegation that Honeywell made a false statement in that, knew that there was a fraud in connection with that determination. And that is what is the essence of a false claims act case. That's what differentiates a false claims act case from a contract dispute, where someone says, I don't think this is a commercial item. I think the product is different. Thank you. Thank you. You had some time for a bottle. Your Honor, we met 9B. And the only way we could meet 9B is to plead representation of fraud that give notice of the fraudulent conduct that we're alleging. Honeywell itself tendered the so-called license agreement, which the District Court expressly found was open to Honeywell charging a software license fee impermissibly for G Corp versions three through six. That's an admission by Honeywell of that fact. Number two, the question of commerciality. The District Court expressly found in dealing with the third amended complaint that the petitioner, based on Honeywell's own admission that that software was never commercially sold, licensed, or anything, the question of funding, that was a Honeywell document itself saying that, remember this system, the guidance system consists of hardware and software. And what that G Corp versions three through six, with substantial funding by the government, was both the hardware and the software. That is a non-conclusory allegation. In fact, it may turn out, Your Honor, that discovery will show that is not true. But we're dealing with pleading plausible non-conclusory allegations of fact which are inconsistent with one another. And that we adequately satisfied. The Kirshner, and it's interesting, the Kirshner, the government contracting officer himself, said that the license fee, not the software, was commercial, not the hardware or anything was commercial. He said the license fee was commercial. Well, under the definitions of FARs and DFARs, a fee is not a commercial item. And so that's a stretch, and even if it was in fact a commercial item, then Honeywell could charge, no question about it, Honeywell could charge the government what it charges all its commercial customers with respect to that software and hardware. Well, Honeywell, after the Kirshner so-called determination was made in 2011, proceeded to give the government a reduction of the software fee and reduce it from 10,000 a unit to 7,500 a unit, I believe. So their action itself was even inconsistent, and that is pleaded in the complaint. I think we understand your case. Okay. Thank you. Thank you, Your Honor. The case is argued. We'll stand submitted.
judges: Kozinski, W. Fletcher, Gould